# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| FAIRHOPE PIGGLY WIGGLY-INC., and THOMAS EUGENE CAIN, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | CIVIL ACTION: 17-00031-KD-N |
| PS 2 LED, INC., a Texas corporation, and PINNACLE LED SOLUTIONS, LLC, Defendants. | ) ) ) ) | |

## ORDER

This matter is before the Court for a non-jury trial[1] on the request for Declaratory Judgment wherein Plaintiffs seek a declaration that they are not bound to arbitrate their dispute with Defendants.

## I. Findings of Fact

This case concerns a dispute regarding an LED lighting project at Plaintiffs' Fairhope grocery store. (Doc. 22). That dispute is secondary to the dispute over whether the parties are contractually bound to resolve their dispute in arbitration -- the basis for Plaintiffs' declaratory judgment claim (First Cause of Action). (Doc. 22 at 4 at ¶¶20-24).

In the relevant time period, 2014-1016, Thomas Eugene Cain (Cain) owned several businesses including T. Cain Grocery, Inc., Piggly Wiggly Spanish Fort, Inc. (P.W. Spanish Fort), Piggly Wiggly-Loxley, Inc. (P.W. Loxley), Piggly Wiggly-Fairhope, Inc. (P.W. Fairhope) and Piggly Wiggly-Foley Inc. (P.W. Foley). The first contact Cain had with Defendant PS 2

---

[1] Due to issues of material fact, Defendants' motion to compel arbitration was denied and the matter was set for non-jury trial. "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial...If no jury trial be demanded by the party alleged to be in default...the court shall hear and determine such issue…." 9 U.S.C. § 4.

1

LED, Inc. (Pinnacle) was in relation to P.W. Fairhope. Cain wanted to put new lights in the P.W. Fairhope store and selected Pinnacle for the project. Pinnacle conducted an audit of the P.W. Fairhope store in November 2014 to assess the lighting needs and then submitted a proposal for the installation of LED lighting to Cain on June 11, 2015. (Def's Tr. Ex. L). Also during this time period, Pinnacle assisted Cain in applying for a grant from the United States Department of Agriculture (USDA) to help fund the transition to LED lighting in the P.W. Fairhope location, as well as other locations.

Sometime in June 2015, Cain asked that the P.W. Fairhope project be put on hold and that Pinnacle install LED lighting in the new Spanish Fort location – the P.W. Spanish Fort. For the P.W. Spanish Fort project, a thirteen page "Turnkey Agreement for Piggly Wiggly Spanish Fort" (Turnkey Agreement) was signed in November 2015. (Def's Tr. Ex. A). The Agreement was executed among Pinnacle Solutions, Bay Shore Electric, and Piggly Wiggly Spanish Fort, Inc. ("Buyer") and is signed by Cain for Piggly Wiggly Spanish Fort, Inc. (Id. at 1). The Turnkey Agreement is the standard agreement Pinnacle uses for all of its projects, with the exception of an added provision found at 2.10 concerning "additional worksites." (Id. at 2 at ¶2.10). Provision 2.10 provides:

> 2.10 Worksite or Site: "Worksite" or "Site" means the physical addresses where Products are to be shipped and Services to be performed: 315 Spanish Fort Blvd., Spanish Fort, Alabama 36527. Buyer may add additional Worksites by issuing an Order to Pinnacle for Products. All such additional Orders and Worksites shall be subject to this Agreement…..

(Id.) The Turnkey Agreement defines Order as "such purchase order or paper or electronic records as Buyer may send to Pinnacle for the purpose of ordering Products hereunder at a particular Site of Buyer, including but not limited to Letters of Intent." (Id. at 1 at ¶2.5). The

Turnkey Agreement also contains Pinnacle's standard arbitration provision: "…[a]ny dispute, controversy, or claim relating to this Agreement or breach thereof, shall be submitted to arbitration….[t]his arbitration provision is intended to be construed as broadly as permitted by law."  (Id. at 4 at ¶5.2).

At trial Bill Lane (Lane), Vice President of Business Development for Pinnacle, testified that provision 2.10 of the Turnkey Agreement was added to make it easier for Cain to request that LED lighting be installed in his other grocery store locations.  However, Lane did not discuss this provision with Cain, and Lane was not aware of whether any other employee of Pinnacle discussed this provision with Cain.  For Cain's part, he admitted at trial that he may not have read provision 2.10 and certainly did not pay any attention to it if he did read it.

After the P.W. Spanish Fort project was completed, on March 24, 2016, Cain signed a one page Letter of Acceptance for LED lighting to be installed at the P.W. Fairhope.  (Def's Tr. Ex. B). The Letter of Acceptance was an acceptance of an offer by Pinnacle to install LED lighting for a certain price and under certain terms. The Letter of Acceptance, which was drafted by Pinnacle, was executed between "Pinnacle Solutions" and "Cain's Grocery[2]."  (Id.) Lane testified that the Letter of Intent was only one page because it was Pinnacle's intent for the 2015 Turnkey Agreement to govern the installation of the LED lighting in P.W. Fairhope.  However, nothing in the Letter of Acceptance indicates this intent.  Lane also testified that Pinnacle did not know that for each of Cain's grocery store locations, a separate legal entity operates each business.

After the installation of LED lighting in P.W. Fairhope, Pinnacle invoiced P.W. Fairhope by sending an August 17, 2016 invoice for $148,031.79 to the bank financing the P.W. Fairhope

---

[2] Cain testified that "Cain's Grocery" is not a legal entity.

project. (Def's Tr. Ex. D). P.W. Fairhope had previously designated the bank as its agent for the payment of invoices on this particular project.[3] The invoice included a statement providing that by accepting delivery of the products, P.W. Fairhope agreed to the terms of Pinnacle's Purchase Agreement. (Def's Tr. Ex. D). The Purchase Agreement referenced in the invoice included the same arbitration provision found in the 2015 Turnkey Agreement.

After the invoice was sent, a dispute developed about the total and final amount owed by P.W. Fairhope. P.W. Fairhope made a partial payment on the invoice to Pinnacle (paying $136,231.02, leaving a balance of $11,800.77).

On November 22, 2016, Pinnacle filed an arbitration demand against P.W. Fairhope before the American Arbitration Association (AAA) for breach of contract and unjust enrichment. An arbitrator was appointed and the parties were scheduled to have a preliminary hearing conference with the arbitrator, but Plaintiffs disputed the matter is subject to arbitration and raised an objection to the proceeding.

On December 15, 2016, Plaintiffs filed a five (5) count complaint against "Defendant PS2 LED, Inc. d/b/a Pinnacle LED Solutions, LLC" in the Baldwin County Circuit Court, Alabama (05-CV-2016-901424.00), seeking declaratory and equitable relief and damages for breach of contract and fraud stemming from its performance with regard to the Fairhope Piggly Wiggly 2016 contract. (Doc. 1-1). The case was removed to this court.

## II. Applicable Law & Burdens of Proof

A party seeking to compel or invoke arbitration bears the initial evidentiary burden to prove that it may enforce the agreement. Hanover Ins. Co. v. Atlantis Drywall & Framing

---

[3] Neither party was certain whether the invoice was also sent to the address listed on the invoice. This is irrelevant since the evidence is clear that the bank was acting as a payment agent for P.W. Fairhope on the project.

LLC, 611 Fed. Appx. 585, 588-589 (11th Cir. 2015) (in Alabama, "[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce[]"); USHealth Group, Inc. v. South, 636 Fed. Appx. 194, 201 (5th Cir. 2015) *("[s]ee, e.g.*, *In re Weekley Homes*, 180 S.W.3d at 131–32; *Carr*, 337 S.W.3d at 498–99; *In re Merrill Lynch*, 195 S.W.3d at 817 (noting that under Texas law, the party seeking to compel arbitration has the evidentiary burden to prove it may enforce the agreement)[]"). If Pinnacle satisfies that burden, the burden shifts to Cain and P.W. Fairhope to present evidence that the arbitration agreement is not valid or is inapplicable. Hanover, 611 Fed. Appx. at 589 ("[a]fter a motion…has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question. *Fleetwood Enters., Inc. v. Bruno*, 784 So.2d 277, 280 (Ala. 2000) (internal alteration, citations and quotation marks omitted)). See also generally Campbell v. Pilot Catastrophe Servs., Inc., 2010 WL 3306935, *2-4 (S.D. Ala. Aug. 19, 2010) (discussing arbitration burdens of proof).

As summarized by this Court in Campbell, 2010 WL 3306935 at *2-3:

"The FAA reflects the fundamental principle that arbitration is a matter of contract" and "places arbitration agreements on an equal footing with other contracts." *Rent–A–Center, West, Inc. v. Jackson*…130 S.Ct. 2772, 2776…(2010). Accordingly, in construing arbitration agreements, courts apply state-law principles relating to ordinary contract formation and interpretation, viewed through the lens of the federal policy favoring arbitration. *See Caley*, 428 F.3d at 1368 ("in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts," taking into account the federal policy favoring arbitration).

Under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." ….

Additionally, this Court exercises diversity-of-citizenship jurisdiction over this case such

5

that the choice of law principles of Alabama, the forum state, apply. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995). Alabama applies the law of the state where the contract was formed (*lex loci contractus),* unless a provision in a contract specifies the governing law. Cherokee Ins. Co. v. Sanches, 975 So.2d 287, 292 (Ala. 2007). The contracts Pinnacle seeks to enforce are governed by the laws of the State of Texas. (Def's Tr. Ex. A at ¶10.1; Def's Tr. Ex. E at ¶10.1). Plaintiffs assert that the laws of the State of Alabama apply however, because they are not parties to the 2015 Agreement for the P.W. Spanish Fort and never agreed to Pinnacle's Purchase Agreement. The Court need not decide as it appears that there is no conflict between these states' laws in the area of contract formation and construction.

**III.    Conclusions of Law**

There is no dispute that the 2015 Agreement for P.W. Spanish Fort contains an arbitration provision and/or that interstate commerce is involved. The dispute is whether the P.W. Fairhope project is an "additional worksite" under the P.W. Spanish Fort Agreement such that its arbitration provision applies to P.W. Fairhope dispute.

Pinnacle contends that the 2015 Turnkey Agreement is applicable to the P.W. Fairhope project because the Turnkey Agreement clearly contemplated "additional worksites" via "additional Orders", i.e., the Letter of Acceptance. Per Pinnacle, because P.W. Fairhope is an "additional worksite" stemming from the Turnkey Agreement, it is subject to the Turnkey Agreement including its requirement to resolve any disputes via arbitration.

It appears to have been the intent of Pinnacle that "additional worksites" (i.e., P.W. Fairhope) be subject to the 2015 Agreement. However, as explained in Millard Refrig. Servs.,

Inc. v. Darville, 2016 WL 8232237, *4 (S.D. Ala. Jan. 29, 2016):

> …Under applicable law, courts must enforce unambiguous contract language as written by giving effect to the clear, plain meaning of the contract terms and not rewriting the agreement. *See, e.g., City of Gadsden v. Boman*, 143 So.3d 695, 704 (Ala. 2013) ("Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.") (citations omitted)….

Thus, the intent of the parties only becomes relevant when a contract is ambiguous.[4]

The 2015 Agreement provides that the "Buyer" may add "additional worksites." The "Buyer" is defined as "Piggly Wiggly Spanish Fort, Inc." P.W. Fairhope is not the "Buyer" and it is not a party to, or signatory of, the Agreement. This is not ambiguous. As such, neither the intent of Pinnacle to bind P.W. Fairhope, nor the fact that Pinnacle *assumed* that its dealings with just one entity (P.W. Spanish Fort) covered or would cover *any and all* such grocery store lighting projects (such as P.W. Fairhope) is relevant.[5] Groover v. Michelin N.A., Inc., 90 F.Supp.2d 1236, 1246 (M.D. Ala. 2000) ("If the court determines that the language of the contract is not ambiguous then parole evidence is not admissible to show the understanding of

---

4  See, e.g., Branch Banking and Trust Co. v. Maclay Const., Inc., 2016 WL 1118455, *8 (S.D. Ala. Mar. 22, 2016) (citing Peppertree Apts. LTD v Peppertree Apts., 631 So.2d 873, 878 (Ala. 1993) (providing that "[t]he intention of the parties controls…and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous[]"); Outokumpu Stainless, LLC v. Siemens Indus., Inc., 2015 WL 6966150, *6 (S.D. Ala. Oct. 20, 2015) ("traditional contract-interpretation principles call for construing a contract by looking to the intent of the parties as derived from the objective meaning of the words of the contract…."[e]xtrinsic evidence of the parties' subjective understanding is not consulted unless the contract is ambiguous[]"); WM Mobile Bay Environ. Ctr., Inc. v. City of Mobile Solid Waste Auth., 2014 WL 7336095, *5 (S.D. Ala. Dec. 22, 2014) (in Alabama "'the circumstances surrounding the contract are considered only where the terms are ambiguous' and the Court need 'not consider evidence of the parties' intentions or course of dealing' unless there is an ambiguity… [w]hether a contract is ambiguous is a question of law for the trial court to determine[]"); Alabama Title Loans, Inc. v. White, 80 So.3d 887, 893 (Ala. 2011) ("Where contract terms are unambiguous, we do not look beyond the plain language of the contract to second-guess the intentions of the parties; nor will we speculate about what may have been the subjective expectations of the parties.") (citations omitted); Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc., 473 S.W.3d 296, 305 (Tex. 2015) (a contract is ambiguous when it is "subject to two or more reasonable interpretations," which creates "a fact issue regarding the parties' intent).

5  There was no evidence presented at trial that Cain mislead Pinnacle as to the entities involved.

either party as to the meaning of the document. *Insurance Concepts, Inc. v. Western Life Ins. Co.*, 639 F.2d 1108, 1110 (5th Cir. 1981)[]"); Anderson v. McAllister Towing and Transp. Co., Inc., 17 F.Supp.2d 1280, 1288 (S.D. Ala. 1998) ("[p]arties to a contract 'are entitled to have their...contracts enforced as written…and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous.' *Gregory v. Western World Ins. Co.*, 481 So.2d 878, 881 (Ala.1985) (citation omitted). As these provisions are not in conflict, and as such are not ambiguous, no further analysis is necessary[]"); GFT Capital Corp. v. Nelson, 2001 WL 946815, *1 (Tex. App.-Dallas Aug. 22, 2001) ("[a]ll of GFT's contentions in support of this argument are based upon GFT's own testimony about its subjective understanding of the contract terms and its intent in executing the contract. Such evidence cannot create an ambiguity in a contract which is otherwise unambiguous[]").

The Letter of Acceptance for the P.W. Fairhope project is signed by Cain, but on behalf of "Cain's Grocery" However, since signatory "Cain's Grocery" is not an operating/existing entity, an ambiguity exists. From the evidence presented at trial, a reasonable conclusion is that "Piggly Wiggly Fairhope-Inc." and/or T. Cain Grocery, Inc. were/was intended to be a party to the Letter of Acceptance. However, no reasonable interpretation of the intent of the parties would allow for the conclusion that "Piggly Wiggly Spanish Fort, Inc." is a party to the Letter of Acceptance. Thus, it cannot be said that the "Buyer" – "Piggly Wiggly Spanish Fort, Inc." -- designated P.W. Fairhope as an "additional worksite," which would in turn make the P.W. Fairhope project subject to the 2015 Turnkey Agreement and its arbitration provision.

The Court is satisfied by the evidence at trial that a contract was formed between Pinnacle and P.W. Fairhope for the P.W. Fairhope project via the March 24, 2016 Letter of

Acceptance. "The elements of a valid contract include an offer and acceptance, consideration, and mutual assent or a meeting of the minds as to the terms essential to the formation of the contract. *Ex parte Grant*, 711 So. 2d 464, 464 (Ala. 1997) (quoting *Strength v. Ala. Dep't of Fin., Div. of Risk Mgmt.,* 622 So.2d 1283, 1289 (Ala. 1993))." Univalor Trust, SA v. Columbia Petroleum, LLC, 2017 WL 2303999, *9 (S.D. Ala. May 25, 2017). See also e.g., Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc., 995 F. Supp.2d 587, 609 at note 11 (N.D. Tex. 2014) (discussing the same contract formation elements for Texas). Thus, "any and all terms essential to the contract must be both defined and agreed-upon." Mims v. Bogan, 2015 WL 4605700, *2 (M.D. Ala. Jul. 30, 2015) (citing Browning v. Peyton, 918 F.2d 1516, 1521 (11th Cir. 1990)). "Assent must be manifested by something. Ordinarily, it is manifested by a signature. *See Commercial Credit Corp. v. Leggett*, 744 So.2d 890, 895-96 (Ala. 1999); *Premiere Chevrolet, Inc. v. Headrick,* 748 So.2d 891, 893 (Ala. 1999); *Crown Pontiac, Inc. v. McCarrell*, 695 So.2d 615, 618 (Ala. 1997)." Oncology Specialties P.C. v. McKesson Specialty Care Distribution Corp., 2017 WL 2265891, *4 (N.D. Ala. May 24, 2017).

Pinnacle offered to perform the P.W. Fairhope lighting project, Cain accepted Pinnacle's offer on behalf of P.W. Fairhope, and a down payment of $70,134.48 was paid as consideration, as evidenced on the face of the Acceptance. (Def's Tr. Ex. B). The Letter of Acceptance contains no arbitration provision and makes no reference to, or incorporation of, Pinnacle's Purchase Agreement (which contains an arbitration provision). At trial, Cain testified, and Pinnacle did not dispute, that he never discussed arbitration with Pinnacle in connection with the P.W. Fairhope project. Moreover, the Letter of Acceptance states that "[p]lease sign and accept this as your letter of intent. This form should be signed by an authorized company official

9

**agreeing to the terms below** authorizing work to be completed as specified…" (emphasis added). Thus a contract was formed with the terms agreed to included in the Letter of Acceptance.

Nevertheless, Pinnacle contends that an invoice issued to P.W. Fairhope almost four months later on August 17, 2016 (Def's Tr. Ex. D) for final payment on the P.W. Fairhope project (after substantial completion of the work and long after the lighting products had been delivered) makes the arbitration provision part of the contract. The August 2016 Invoice provides: "[b]y accepting delivery of the products in this Invoice, customers agrees to the terms of Pinnacle's Purchase Agreement, which can be found at: http://pinnacleledsolutions.com/legal. If you do not agree with the terms of the agreement, you may return products within 10 days of delivery." (Def's Tr. Ex. D). Pinnacle asserts that this Invoice binds P.W. Fairhope to arbitration because the Invoice incorporates by reference Pinnacle's Purchase Agreement (which contains an arbitration provision) and P.W. Fairhope made partial payment in response.

The Court disagrees. The evidence at trial indicates that Plaintiffs were never presented with any arbitration provision or agreement, much less assented to same as part of their contractual dealings with Pinnacle for the P.W. Fairhope project. Pinnacle cannot unilaterally add to or change the terms of a contract, via invoice or otherwise.[6] See, Karlson v. Red Door Homes, LLC, 18 F.Supp.3d 1301, 1310 and note 8 (N.D. Ala. 2014) ("the Eleventh Circuit has also cited to Texas cases for support for [the proposition that an invoice cannot change the terms of a contract]. *In re Charter Co*., 913 F.2d 1575, 1580 (11th Cir.1990) (quoting *Preston Farm*, 625 S.W.2d 295, 299 (Tex.1982)) (finding that invoices…can only serve "as billing [statement]

---

[6] Moreover, by the time the Invoice issued, the LED lights had already been delivered and installed in the P.W. Fairhope project. Thus, to "reject" or "object" to same "within 10 days of delivery" as the Invoice provides, Plaintiffs would have had to do so before they even saw the Invoice instructing them how to "reject" or "object."

to show…the total amount owed[;] [t]he basic contract….had already been formed and executed."). Alabama case law does not imply otherwise, namely that a party can unilaterally change contract terms in a billing statement for work completed[]").

Pinnacle also asserts that Plaintiffs' 92% payment on the August 2016 Invoice evidences acceptance of the legal terms and conditions of the Purchase Agreement, which was incorporated in the Invoice, including its arbitration provision. Again, the Court disagrees. Plaintiffs' payment was an effort to perform on its financial obligations under the Acceptance (the contract); to pay for the lights as installed by Pinnacle. No caselaw submitted by Pinnacle supports a contrary conclusion. And in contrast, as explained in <u>Stewart & Stevenson, LLC v. Galveston Party Boats, Inc</u>., 2009 WL 3673823, *7-9 (Tex. App.-Houston (1st Dist.) Nov. 5, 2009) (internal citations omitted), discussing Texas law (which Pinnacle seeks to have the Court apply):

> Stewart & Stevenson refers to its invoices, which contained an arbitration clause printed on the back….and argues that GPB's payment of the invoices constituted acceptance of the written agreement containing the arbitration clause. GPB argues that it never reached a meeting of the minds with Stewart & Stevenson regarding an agreement to arbitrate…
> ***
> The agreement contained all terms necessary to a valid and binding contract…..The agreement did not contain an arbitration provision.
>
> The only mention of an arbitration provision is included in the invoices sent….pursuant to its already existing agreement to provide goods and services…Under the facts presented here, these invoices were not individual contracts in and of themselves-they were acknowledgments detailing that portion of the goods and services provided….in performance of its already existing contract... This is not enough to show a meeting of the minds….on the arbitration agreement contained on the back of the invoices….

## IV. <u>Conclusion</u>

Upon consideration, it is **ORDERED** that Plaintiffs' First Cause of Action seeking a Declaratory Judgment is **GRANTED** such that a **DECLARATORY JUDGMENT** is entered in

11

favor of Plaintiffs and against Defendants that Plaintiffs are not obligated to resolve this matter in arbitration.   This case is **REFERRED** to the assigned U.S. Magistrate Judge for entry of the appropriate scheduling order.

      **DONE** and **ORDERED** this the **5th** day of **July 2017.**

                                       /s/ Kristi K. DuBose
                                       **KRISTI K. DuBOSE**
                                       **CHIEF UNITED STATES DISTRICT JUDGE**